**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

ANGELICA REBECA GONZALEZ-GARCIA; and her daughter, S.K., by and through her mother, ANGELICA REBECA GONZALEZ-GARCIA,

Plaintiffs,

v.

JEFFERSON BEAUREGARD SESSIONS III, Attorney General of the United States; KIRSTJEN NIELSEN, Secretary of the Department of Homeland Security; THOMAS HOMAN, Acting Director of U.S. Immigration and Customs Enforcement; PATRICK CONTRERAS, Director, ICE Field Office for Enforcement Removal Operations in Houston, Texas; KEVIN K. MCALEENAN, Acting Commissioner of U.S. Customs and Border Protection; ALEX AZAR, Secretary of the U.S. Department of Health and Human Services; SCOTT LLOYD, Director of the Office of Refugee Resettlement; and SOUTHWEST KEY PROGRAMS,

Defendants.

Civil Action No.__________

# COMPLAINT

## INTRODUCTION

1. Angelica Rebeca Gonzalez-Garcia is an asylum-seeker whose seven-year-old daughter was forcibly separated from her, for no legitimate reason, by the United States government. She brings this action because the government is refusing to release her daughter, S.K., from detention at a shelter where the girl—now eight years old, after having spent her birthday in captivity—has suffered emotional distress and physical harm. The government has offered no legitimate basis for this continued detention despite Ms. Gonzalez-Garcia's pleas for S.K.'s release and her uncontested fitness to care for her own child. Now, after more than six

weeks of forced separation, Ms. Gonzalez-Garcia asks this Court to require that S.K. be reunited with her at once.

2. Ms. Gonzalez-Garcia and S.K. arrived in the United States together and sought asylum in Arizona on or about May 9, 2018. On May 11, 2018, without being provided any justification, mother and daughter were forcibly separated as a consequence of the government's policy and practice of family separation at the southern U.S. border.

3. In an act of unmitigated cruelty, when Ms. Gonzalez-Garcia was told that her daughter would be taken from her, an officer said, "Happy Mother's Day."

4. Ms. Gonzalez-Garcia was transferred from Arizona to a facility in Colorado, where an immigration judge later granted her bond and released her from custody. But the government refused to provide Ms. Gonzalez-Garcia with any information about her daughter's location. More than a week after they were separated, Ms. Gonzalez-Garcia was finally informed that her daughter was detained in a shelter in Harlingen, Texas at the direction of the Office of Refugee Resettlement ("ORR"). When Ms. Gonzalez-Garcia was finally able to speak to her daughter, she learned that during her detention, S.K. had been physically injured by another detained child, leaving her bruised and in pain, had contracted an infection that was reported to be conjunctivitis, had suffered a high fever, and was extremely fearful.

5. Ms. Gonzalez-Garcia has been informed that the government intends continue to detain her unless Ms. Gonzalez-Garcia passes the screening to become a "sponsor" for her own child—which could take weeks, if not months. Having unlawfully taken S.K., the government is now requiring Ms. Gonzalez-Garcia to be screened as if she were a stranger to her own child.

6. The government has been informed, and has never disputed, that Ms. Gonzalez-Garcia is S.K.'s mother. Yet it still refuses to reunite S.K. with Ms. Gonzalez-Garcia, who is now domiciled in Framingham, Massachusetts awaiting her asylum hearing.

7. The government's forcible separation of Ms. Gonzalez-Garcia and S.K. as well as its refusal to immediately reunite them, represent an egregious violation of their Fifth Amendment due process rights as well as a violation of the U.S. Constitution's guarantee of equal protection. The government's actions also violate both the Administrative Procedure Act ("APA") and the settlement agreement in *Flores v. Sessions*, 85-cv-4544 (C.D. Cal.). Without intervention of this Court, Ms. Gonzalez-Garcia and S.K. will continue to be separated for no legitimate reason; Plaintiffs respectfully request that this Court require S.K. to be returned to her mother without further delay.

## JURISDICTION

8. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), the federal Declaratory Judgment Act (28 U.S.C. §§ 2201-2202), the Fifth Amendment to the United States Constitution, 28 U.S.C. § 2241 (habeas jurisdiction), 28 U.S.C. § 1346 (United States as defendant), Art. I, § 9, cl. 2 of the United States Constitution ("Suspension Clause"), the Administrative Procedure Act (5 U.S.C. § 704), and ¶ 24(B) of the *Flores* settlement agreement. Plaintiff S.K. is in custody for purposes of habeas jurisdiction.

## VENUE

9. Venue is proper under 28 U.S.C. § 1391(e)(1) because Plaintiff Gonzalez-Garcia resides in Framingham, Massachusetts. Venue is further proper because Plaintiff S.K. will reside with her mother in Massachusetts upon her release.

**PARTIES**

10. Plaintiff Angelica Rebeca Gonzalez-Garcia is a citizen of Guatemala. She is the mother of Plaintiff S.K.

11. Plaintiff S.K. is a citizen of Guatemala. She brings suit by and through her mother, Ms. Gonzalez-Garcia.

12. Defendant Jefferson Beauregard Sessions III is sued in his official capacity as the Attorney General of the United States ("Attorney General"). In this capacity, he shares responsibility for the administration of the immigration laws. *See* 8 U.S.C. § 1103.

13. Defendant Kirstjen Nielsen, is sued in her official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS"). In this capacity, she directs each of the component agencies within DHS and has primary responsibility for the administration of the immigration laws, and is a legal custodian of Plaintiff S.K. *See* 8 U.S.C. § 1103.

14. Defendant Thomas Homan is sued in his official capacity as the Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), and is a legal custodian of Plaintiff S.K.

15. Defendant Patrick Contreras is sued in his official capacity as he serves, upon information and belief, as the Director of the ICE Field Office for Enforcement Removal Operations in Houston, Texas, and is a legal custodian of Plaintiff S.K.

16. Defendant Kevin K. McAleenan is sued in his official capacity as the Acting Commissioner of Customs and Border Protection.

17. Defendant Alex Azar is sued in his official capacity as the Secretary of the U.S. Department of Health and Human Services ("HHS"), the department of the executive branch of the U.S. government which has been delegated with authority over "unaccompanied" noncitizen children, and is a legal custodian of Plaintiff S.K.

18. Defendant Scott Lloyd is sued in his official capacity as the Director of Office of Refugee Resettlement ("ORR") is the component of HHS which provides care of and placement for "unaccompanied" noncitizen children, and is a legal custodian of Plaintiff S.K.

19. Southwest Key Programs, upon information and belief, is a Texas corporation transacting business at 6002 Jain Lane, Austin, TX 7872 and 23011 Rio Rancho Rd, Harlingen, TX 78552, and, in acting as agent of ORR, is a legal custodian of Plaintiff S.K.

## FACTS

20. On or about May 9, 2018 Plaintiff Angelica Rebeca Gonzalez-Garcia ("Ms. Gonzalez-Garcia") arrived in the United States from Guatemala, along with her seven-year-old daughter ("S.K."). Customs and Border Protection ("CBP") officials arrested her and her daughter. CBP transferred mother and daughter to a holding facility, where they were held in a room with approximately 30-40 other people.

21. Ms. Garcia-Gonzalez, upon belief, was never charged with a crime.

22. On May 10, 2018, CBP officials told Ms. Garcia-Gonzalez that they intended to forcibly remove her daughter from her the next day. Cruelly, an officer wished her "Happy Mother's Day."

23. On May 11, 2018, Ms. Garcia-Gonzalez was forcibly separated from her seven-year-old daughter. The separation served no legitimate legal or child welfare purpose.

24. Upon separation, C.B.P. transferred S.K. to the custody of the ORR, which in turn transferred S.K. to a shelter in Harlingen, Texas.

25. Ms. Gonzalez-Garcia was transferred to Colorado. On June 19, 2018, she was released on a minimal bond issued by an immigration judge, after filing an asylum application. She currently is residing in Framingham, Massachusetts.

26. Since learning of the location of her daughter on or about May 25, 2018, Ms. Gonzalez-Garcia has only been able to communicate with S.K. remotely during those many weeks. During these phone calls, S.K. expresses her fear and begs Ms. Gonzalez-Garcia to take her out of the shelter.

27. With the assistance of counsel, Ms. Gonzalez-Garcia has undertaken every effort to have her daughter returned to her.

28. On June 22, 2018, Ms. Gonzalez-Garcia completed a 36-page screening form to justify her qualification as a "sponsor" of her own daughter. On Sunday, June 24, 2018, additional information was submitted to the government, including a birth certificate showing the relationship between Ms. Gonzalez-Garcia and her daughter. But her release was still not permitted.

29. Ms. Gonzalez-Garcia was informed that all individuals in the household in which she is staying would be required to submit fingerprints, and that the earliest opportunity to do this is July 16, 2018 in Newark, New Jersey.[1] Ms. Gonzalez-Garcia was already fingerprinted by the government in May. Ms. Gonzalez-Garcia offered to provide her submit her fingerprints on an expedited basis through a private fingerprinting service, but the shelter refused that offer.

30. There is no evidence, or even allegation, that Ms. Gonzalez-Garcia is in any way unable to care for S.K. By contrast, the efforts undertaken by Ms. Gonzalez-Garcia demonstrate that she is acting in the best interests of her child.

31. S.K. will be a "derivative" applicant on her mother's asylum application, and therefore her legal claims will likely proceed in the Boston immigration court as part of her mother's case.

[1] Prior to engaging counsel, Ms. Gonzalez-Garcia was told that the earliest possible fingerprint date was July 31, 2018 in Worcester, Massachusetts.

32. Ms. Gonzalez-Garcia has not seen her daughter since she was taken from her on May 11, 2018. Each day they are separated causes her greater harm and could potentially lead to permanent emotional trauma of S.K. Ms. Gonzalez-Garcia worries about S.K. constantly and is desperate to be reunited.[2]

## CAUSES OF ACTION

### COUNT I

### (Violation of Substantive and Procedural Due Process)

33. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

34. The Due Process Clause of the Fifth Amendment applies to all "persons" on United States soil and thus applies to Ms. Gonzalez-Garcia and her daughter, S.K.

35. Ms. Gonzalez-Garcia and S.K., have a liberty interest under the Due Process Clause in remaining together as a family.

36. The separation of Ms. Gonzalez-Garcia from her daughter, and the defendants' ongoing failure to reunite them, violate substantive due process. These actions further no legitimate purpose and no compelling governmental interest.

37. Moreover, Ms. Gonzalez-Garcia and her daughter were denied, and are still being denied, procedural due process. They were forcibly separated without *any* process, and Ms. Gonzalez-Garcia has not been allowed to be reunited with her daughter.

---

[2] Jack Healy, "Migrant Parents Wait and Hope for Their Children: 'I Feel Like I'm Going to Die'," *New York Times* (June 25, 2018) (available at https://www.nytimes.com/2018/06/21/us/immigrant-children-separating-families.html).

**COUNT II**

**(Violation of the Fifth Amendment's Equal Protection Guarantee)**

38. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

39. The Fifth Amendment contains an implicit guarantee of equal protection that invalidates any official action that in part reflects a racially discriminatory intent or purpose. Classifications based on race or national origin receive exacting scrutiny, and even facially neutral policies and practices will be held unconstitutional when they reflect a pattern unexplainable on grounds other than race or national origin.

40. Defendants' decisions to separate families from Central America arriving at the southern border seeking asylum, and to isolate children in detention facilities separate from their parents, are unconstitutional because they were motivated, at least in part, by intentional discrimination based on race, ethnicity, and/or national origin. This intentional discrimination includes bias against immigrants perceived to come from Central American countries.

41. As a result of these decisions, including the decisions that have caused their separation, Ms. Gonzalez-Garcia and S.K. have been and are being denied equal protection.

**COUNT III**

**(Violation of Administrative Procedure Act)**

42. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

43. Under the APA, "final agency action for which there is no other adequate remedy in court [is] subject to judicial review." 5 U.S.C. § 704. Upon judicial review, "agency action, findings, and conclusions" shall be "h[e]ld unlawful and set aside" when they are "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence. . . ." 5 U.S.C. §§ 706(2)(A), (E).

44. Congress has charged HHS and, by extension, ORR, with "promptly placing" minors in its custody "in the least restrictive setting that is in the best interest of the child[.]" 8 U.S.C. § 1232(c).

45. In June 2018, in the midst of public outcry involving the government's practices of separating parents from children, ORR made it more difficult to release "unaccompanied" children by creating a new requirement that each adult household member in the home of the "sponsor" be fingerprinted. Under the policy, fingerprints are shared with DHS for immigration checks and criminal checks. ORR Policy Guide, *Children Entering the United States Unaccompanied* § 2.5.1 (revised June 7, 2018), available at acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2#2.5.1.

46. Although she was already fingerprinted at the border, and although her child was taken from her by the government itself, Ms. Gonzalez-Garcia has been informed that she may not be reunited with S.K. unless she complies with these procedures. What is more, complying with these procedures requires her to wait until July 16, 2018, for a fingerprint appointment in Newark. Because processing could take additional weeks after the application for "sponsorship" is complete, it is likely the earliest that ORR could reunite Ms. Gonzalez-Garcia with her eight-year-old daughter is August 2018.

47. Ironically, having provided no process at all for considering S.K.'s best interests before tearing her from her mother and placing her in the care of strangers, the government now erects a mountain of paperwork and checks to ensure that she will not be harmed by reunification.

48. Applying these burdensome requirements to "unaccompanied" children like S.K.—who seek reunification with a parent from whom they were forcibly separated—unreasonably extends family separations that never should have occurred to begin with. It is devoid of any legitimate child welfare rationale, and is arbitrary, capricious, an abuse of discretion, and contrary to law.

**COUNT IV**

**(Violation of the *Flores* Settlement Agreement)**

49. The *Flores* Settlement, signed in 1997, sets forth a "nationwide policy for the detention, release, and treatment of minors in the custody of [immigration officials]," and requires these officials to treat "all minors in its custody with dignity, respect and special concern for their particular vulnerability as minors." *See Flores* Settlement at ¶¶ 9-11. The settlement continues to be binding upon the government.[3] *See Flores v. Lynch*, 828 F.3d 898, 905-06 (9th Cir. 2016).

50. The *Flores* Settlement requires federal officials to "place each detained minor in the least restrictive setting appropriate to the minor's age and special needs, provided that such setting is consistent with its interests to ensure the minor's timely appearance before the [DHS] and the immigration courts and to protect the minor's well-being and that of others." *See Flores* Settlement at ¶ 11.

51. Section VI of the *Flores* settlement sets forth a "GENERAL POLICY FAVORING RELEASE." Specifically, Paragraph 14 requires that where immigration officials determine that a minor's detention "is not required either to secure his or her timely appearance before [DHS] or the immigration court, or to ensure the minor's safety or that of others," they shall release the

[3] Under the Homeland Security Act of 2003, immigration enforcement functions were transferred from the Immigration and Naturalization Services (INS), which is referenced in the Settlement, to ICE. *See* 6 U.S.C. §§ 111, 251, 291. The care of "unaccompanied" children was transferred to ORR. *See* 6 U.S.C. § 279(a), (b)(1)(A), (g)(2).

minor "without unnecessary delay" to a parent, guardian, or other adult or licensed program willing to accept legal custody. *See Flores* Settlement at ¶ 14. Release to a parent is preferred. *Id.* A minor who is not released to a parent or other adult or program under Paragraph 14 shall remain in the custody of federal agencies and be "placed temporarily in a licensed program until such time as release can be effected in accordance with Paragraph 14 or until the minor's immigration proceedings are concluded, whichever occurs earlier." *Id.* ¶ 19.

52. Paragraph 24(B) of the *Flores* Settlement sets forth a minor's right to challenge a determination to place the minor in a particular facility when in government custody. The minor may seek judicial review in "any United States District Court with jurisdiction and venue over the matter to challenge the placement determination." *See Flores* Settlement at ¶ 24(B).

53. HHS has unlawfully separated S.K. from her mother and needlessly delayed and denied S.K.'s release to the care of her mother despite her mother's availability and willingness to care for her.

54. Defendants' policies, practices, acts, and omissions with respect to S.K.'s continued detention deprive S.K. of her rights under the *Flores* Settlement by failing to place S.K. in the least restrictive setting, failing to reunite S.K. with her parent, and failing to effect S.K.'s release to her parent when it was possible to do so. *See Flores* Settlement ¶¶ 11, 14, 19.

**COUNT V**

**(Declaratory Judgment Act)**

55. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

56. The federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may

declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

57. There is an actual controversy between the parties because Defendants have refused to immediately release S.K. into her mother's custody. The Court should exercise its authority to declare that Defendants have no basis to refuse to release S.K. and must immediately release S.K. into the custody of Ms. Gonzalez-Garcia.

**COUNT VI**

**(Petition for Writ of Mandamus)**

58. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

59. Federal district courts have original jurisdiction to hear "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361; *see also Samirah v. Holder*, 627 F.3d 652, 663 (7th Cir. 2010) (remanding case to district court to issue writ of mandamus commanding Attorney General to take necessary steps to enable alien to reenter United States).

60. Here, as explained above, Defendants owe a duty to Ms. Gonzalez-Garcia and her daughter to immediately release S.K. into Ms. Gonzalez-Garcia's custody. It is therefore appropriate for this Court to issue a writ of mandamus commanding the Defendants to immediately release Ms. Gonzalez-Garcia's daughter.

**COUNT VII**

**(Petition for Writ of Habeas Corpus)**

61. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

62. Defendant S.K., as a natural person present in the United States, has a constitutional liberty interest in release from unlawful detention through the writ of habeas corpus.

63. This Court has jurisdiction to issue a writ of habeas corpus to end the detention of Defendant S.K. because her continued detention violates her legal and constitutional rights as set forth above.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that the Court enter a judgment against Defendants and award the following relief:

A. Declare that Defendants' continued custody of S.K. violates due process, the Equal Protection Clause, the Administrative Procedure Act, and the *Flores* Settlement;

B. Declare that Defendants must immediately release S.K. into the custody of her mother, Ms. Gonzalez-Garcia;

C. Preliminarily and permanently enjoin Defendants from continuing to separate Ms. Gonzalez-Garcia from her minor daughter, S.K., or, alternatively, issue a writ of mandamus or a writ of habeas corpus requiring her release;

D. Require Defendants to pay Plaintiffs' reasonable attorneys' fees and costs; and

E. Order all relief that is just and proper.

Respectfully Submitted,

PLAINTIFFS ANGELICA REBECA GONZALEZ-GARCIA and her daughter, S.K., by and through her mother, ANGELICA REBECA GONZALEZ-GARCIA,

By their Attorneys,

<u>*/s/ Ronaldo Rauseo-Ricupero*</u>

Ronaldo Rauseo-Ricupero (BBO# 670014)
Julia A.C. Lippman (BBO# 688852)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
(617) 345-1000
rrauseoricupero@nixonpeabody.com
jlippman@nixonpeabody.com

Susan B. Church (BBO# 639306)
Heather Yountz (BBO# 669770)
Demissie & Church
929 Massachusetts Ave., Suite 01
Cambridge, MA 02139
(617) 319-2399
sbc@demissiechurch.com

*Of Counsel:*
Matthew R. Segal (BBO# 654489)
Adriana Lafaille (BBO# 680210)
American Civil Liberties Union Foundation of Massachusetts, Inc.
211 Congress Street
Boston, MA 02110
(617) 482-3170
alafaille@aclum.org

Dated: June 27, 2018